**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Joseph Hines,

        **Plaintiff,**

    **v.**

**City of Columbus, et al.,**

        **Defendants.**

**Case No. 2:13-cv-1058**

**Judge Graham**

**Magistrate Judge King**

## OPINION & ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment (doc. 40). For the reasons that follow, the Court will GRANT IN PART AND DENY IN PART the Defendants' Motion.

### I.    Background

The Plaintiff, Joseph Hines, was a student at the Ohio State University at the time of the events in question. The Defendants are Columbus Police Officers: Thomas DeWitt; Debra Paxton; Edward Prime; Earl Westfall; and Ian Pruitt.

On the evening of August 29, 2012, Defendants DeWitt and Paxton were patrolling the University campus on bicycles and encountered the Plaintiff and two of his friends, Anthony Hines and Joaquin Thompson, on the corner of North High Street and East 13th Avenue. DeWitt Aff. at ¶ 6, doc. 40-2; Hines Dep. at 45, doc. 48. As Defendants DeWitt and Paxton approached the area, they allegedly saw the Plaintiff drink from a can and place it on the ground. DeWitt Aff. at ¶¶6–7. They then initiated a conversation with the Plaintiff and questioned him regarding the can on the ground. Id. at ¶ 11. The Plaintiff denied that the container was his and informed the

1

Defendant Officers that he did not have an ID with him. Clark Dep. at 65, 107, doc. 46; Hines Dep. at 67.

After confirming that the can contained an alcoholic beverage, Defendants Paxton and DeWitt decided to arrest the Plaintiff for littering to secure him and prevent him from fleeing while they determined his identity and further investigated his alcohol-related violation. DeWitt Aff. at ¶¶ 9, 13. Defendant Paxton stepped forward and handcuffed the Plaintiff's left wrist while Defendant DeWitt took hold of the Plaintiff's right wrist. Paxton Aff. at ¶ 14, doc. 40-3; DeWitt Aff. at ¶ 14.

At this point in the encounter, the parties' accounts diverge. In the Plaintiff's version of events, Defendants Paxton and DeWitt then tackled him to the ground where he was immediately handcuffed and pinned. Pl.'s Resp. in Opp. at 5, doc. 54. Despite the Plaintiff being handcuffed and nonresistant, Defendant DeWitt straddled the Plaintiff's upper back, maced him, and proceeded to punch him three to six times in the area around his left eye and temple. Id. at 5–8. As Defendant DeWitt assaulted the Plaintiff, Defendant Officer Prime arrived on the scene and immediately punched the restrained Plaintiff three to four times in the ribs. Id. at 5–8. During this assault, the Plaintiff repeatedly yelled that he could not breathe. Id. at 2. Defendant Officers Westfall and Pruitt subsequently hog-tied the Plaintiff even though the Plaintiff was subdued and nonresistant. Id. at 9.

In contrast, the Defendants maintain that they exercised appropriate force to subdue the Plaintiff who resisted arrest and attempted to flee the scene. After Defendant DeWitt took hold of the Plaintiff's right wrist, the Plaintiff jerked his arm back from Defendant DeWitt and took a step away from Defendants Paxton and DeWitt as though he was going to run away. Defs.' Mot. for Summ. J. at 7–8. As the Plaintiff pulled away, Defendant Paxton grabbed the loose handcuff

with both hands to prevent him from using it as a weapon. Id. at 8. The combined momentum of the Plaintiff and Defendants Paxton and DeWitt caused all three to fall to the ground. Id. at 8–9.

When on the ground, Defendant DeWitt informed the Plaintiff that he was under arrest and instructed him to put his hands behind his back. Id. at 9. The Plaintiff attempted to buck Defendant DeWitt off his back and pulled his left arm away from Defendant Paxton to prevent her from handcuffing him. Id. Defendant DeWitt then yelled, "Stop resisting! Stop resisting!" Id. Despite this command, the Plaintiff continued to resist, which led to Defendant Paxton calling for backup and Defendant DeWitt to deploy mace. Id. at 9–11. The mace had no immediate effect on the Plaintiff, which caused Defendant DeWitt to use three to six "small, quick, hammer punches, using the bottom meaty part of [his] fist between the side of his pinky and his wrist" to the left side of the Plaintiff's face. Id. at 11–12. The Plaintiff continued to resist arrest throughout this exchange. Id. at 12.

Defendant Prime subsequently arrived on the scene and witnessed the Plaintiff struggling with Defendants Paxton and DeWitt and resisting arrest. Id. at 12. Unable to safely deploy his taser, Defendant Prime attempted unsuccessfully to gain control of the Plaintiff's free arm and force the Plaintiff back to the ground. Id. at 12–13. Defendant Prime then punched the Plaintiff once in the right upper back, forcing the Plaintiff back to ground. Id. at 13.

After the Defendant Officers handcuffed the Plaintiff, Defendants Westfall and Pruitt arrived on the scene. Id. at 14. Although handcuffed, the Plaintiff continued to kick his feet and attempted to get off the ground. Id. As other officers attempted to keep the Plaintiff on the ground, Defendants Westfall and Pruitt employed a hobble strap to prevent him from kicking his feet and attached the excess length of the strap to the Plaintiff's handcuffs as a safety precaution. Id. at 14–15.

As a result of the events of that evening, the City charged the Plaintiff with resisting arrest and causing physical harm to a law enforcement officer; obstructing official business; underage intoxication; prohibitions for persons under twenty-one years old; littering; and an open container violation. Id. at 15–16. The Plaintiff pled guilty to the charge of littering in exchange for dismissal of the other charges. Id. at 16.

On October 25, 2013, the Plaintiff filed a Complaint (doc. 1) alleging numerous instances of excessive force in violation of 42 U.S.C. § 1983. The Plaintiff filed an Amended Complaint (doc. 20) on October 31, 2014. The Defendants filed a Motion for Summary Judgment (doc. 40) on April 1, 2015. That motion is now fully briefed and ready for a decision.

## II.      Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48

(1986); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III.    Discussion

The Plaintiff brings claims of excessive force, failure to intervene, and conspiracy against the Defendants under 42 U.S.C. § 1983. For a § 1983 claim to survive summary judgment, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a

right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Burley v. Gagacki, 729 F.3d 610, 619 (6th Cir. 2013) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006)). As there is no dispute that the defendants were acting under the color of state law, only the first prong is at issue in this case.

### A.    *Excessive Force*

The Fourth Amendment protects individuals from the use of excessive force during an arrest. Graham v. Connor, 490 U.S. 386, 394–95 (1989). A determination of whether an officer's use of force was reasonable requires courts to "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013). Courts consider three factors when applying the objective reasonableness test: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Martin v. City of Broadview Heights, 712 F.3d 951, 958 (6th Cir. 2013) (quoting Graham, 490 U.S. at 396). "These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." Burgess, 735 F.3d at 472.

The Defendants invoke qualified immunity as a defense to the Plaintiff's claims in this action. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231

(2009) (internal citation and quotation marks omitted). "The first step in a qualified immunity analysis is to ask whether the public official's conduct violated a constitutional right." Pollard v. City of Columbus, Ohio, 780 F.3d 395, 402 (6th Cir. 2015) (citing Pearson, 555 U.S. at 232). If a constitutional right was violated in an excessive force case, "the second step is to ask whether the right was clearly established at the time of the violation, such that a reasonable officer confronted with the same situation would have known that using [the amount of force in question] would violate that right." Pollard, 780 F.3d at 402 (citation and internal quotation marks omitted). "These questions may be answered in either order; if either one is answered in the negative, then qualified immunity protects the officer from civil damages." Goodwin v. City of Painesville, 781 F.3d 314, 321 (6th Cir. 2015) (citing Martin, 712 F.3d at 957). In analyzing the issue of qualified immunity, courts must view the facts in the light most favorable to the nonmoving party. Tolan v. Cotton, ─── U.S. ───, 134 S.Ct. 1861, 1866 (2014).

Here, the Plaintiff brings excessive force claims against Defendants Paxton, DeWitt, Prime, Westfall, and Pruitt. The Court addresses each of these claims in turn.

1.      Defendant Officer Paxton

The Plaintiff alleges that Defendant Paxton used excessive force against him when she handcuffed the Plaintiff "and thereafter wrench[ed] on said handcuffs to cause physical injury" while taking him to the ground and again after he was subdued on the ground. Pl.'s Resp. in Opp. at 18.

The Defendants argue that Defendant Paxton is entitled to summary judgment on this claim because "[t]he handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force." Defs.' Mot. for Summ. J. at 19 (citations

omitted). In the Defendants' view, Defendant Paxton was in the process of lawfully arresting the Plaintiff for littering when the Plaintiff jerked away from her, requiring her to grab hold of the loose handcuff with both hands to secure it. She then attempted to pull the Plaintiff's left arm behind his back so she could handcuff his right arm. Once the Plaintiff was actually handcuffed, Defendant Paxton did not pull or apply any force to the handcuffs.

In response, the Plaintiff maintains that he "readily submitted to Paxton handcuffing his left wrist. He reflexively pulled back when Defendant DeWitt grabbed his right wrist, and, in doing so, stepped forward with his right leg to maintain his balance. He did not other[wise] actively resist arrest or attempt[] to evade arrest by flight." Pl.'s Resp. in Opp. at 16. According to the Plaintiff, Defendant Paxton (1) "wrenched" on the handcuff to take him to the ground, (2) quickly handcuffed his free wrist, and, (3) despite being handcuffed, "wrenched" on the handcuffs again resulting in deep lacerations to the Plaintiff's wrist.

When viewed in the light most favorable to the Plaintiff, the record contains the following evidence: Defendant Paxton handcuffed the Plaintiff's left wrist. Paxton Aff. at ¶ 14. The Plaintiff jerked his right arm back from Defendant DeWitt. Hines Dep. at 82–85. Defendant Paxton grabbed on to the free handcuff, Paxton Aff. at ¶ 15, and both Defendants Paxton and DeWitt tackled the Plaintiff off the ground and into the concrete sidewalk, knocking him unconscious, Hines Dep. at 85, 98–99. In addition to being knocked unconscious, the Plaintiff had a "real deep gash on [his] left wrist" that resulted in significant scarring, id. at 142–43, presumably because of the force Defendant Paxton applied to the handcuff on that wrist. The Defendants dispute many of these factual allegations, but their dispute only creates a genuine issue of material fact that a jury must resolve.

Under the Plaintiff's set of facts, the first <u>Graham</u> factor, the severity of the crime at issue, weighs against a finding that Defendant Paxton's use of force in this instance was justified. Defendant Paxton arrested the Plaintiff for littering, Paxton Aff. at ¶ 13, a minor crime by any definition.

The second <u>Graham</u> factor, whether the suspect poses an immediate threat to the safety of the officers or others, offers little support for Defendant Paxton's use of force in this instance. Both Defendants Paxton and DeWitt testified that a loose handcuff can be used as a weapon by a suspect. <u>Id.</u> at ¶ 15; DeWitt Aff. at ¶ 14. However, there is no evidence of that the Plaintiff used or attempted to use the loose handcuff in such a manner. Nor is there any evidence of the Plaintiff possessing a weapon, committing a serious crime associated with violent conduct, or otherwise threatening the Defendant Officers.

Finally, the third <u>Graham</u> factor, whether the subject actively resists arrest or attempts to evade arrest by flight, involves disputed facts. The record contains evidence that, as Defendants Paxton and DeWitt attempted to arrest the Plaintiff, he jerked his right arm away from Defendant DeWitt and stumbled as a result of being pulled in multiple directions. Hines Dep. at ¶ 85–87. Although the Defendant Officers characterize these acts as evidence of resisting arrest and attempting to flee, when construed in the light most favorable to the Plaintiff, the record contains conflicting evidence regarding these factual issues.

Issues of fact preclude a grant of summary judgment in Defendant Paxton's favor. If the Plaintiff's version of facts is found to be credible, a jury could reasonably find that the Plaintiff was subject to excessive force. The Defendants do not argue that a reasonable officer confronted with the same situation would have known that using the amount of force in question would

violate the Plaintiff's right to be free from the use of excessive force. Therefore, the Court will deny the Defendants' Motion as to Defendant Paxton.

2.      Defendant Officer DeWitt

The Plaintiff alleges that Defendant DeWitt used excessive force against him when Defendant DeWitt (1) tackled the Plaintiff to the ground; (2) maced the immobilized, handcuffed, and nonresistant Plaintiff; and (3) repeatedly punched the immobilized, handcuffed, and nonresistant Plaintiff in the face.

The Plaintiff has presented evidence that, after he jerked his arm back from Defendant DeWitt, Defendants Paxton and DeWitt immediately took him to the ground. Hines Dep. at 82–85. Unable to brace himself due to one hand being cuffed by Defendant Paxton and his other arm being held by Defendant Paxton, the Plaintiff fell to the ground face first, and was knocked unconscious by the fall. Id. at 88–99. After hitting the ground, Defendant DeWitt quickly repositioned himself and sat on the Plaintiff's back. Clark Dep. at 115–118, doc. 46. At that time, the Plaintiff was "not struggling at all." Id. at 117. Defendant Paxton or DeWitt cuffed the Plaintiff's second wrist "[r]ight after they got on the ground." Id. at 120.

At that point, Defendant DeWitt took out his pepper spray. Id. The Plaintiff did not say anything to Defendant DeWitt and Defendant DeWitt did not say anything to the Plaintiff. Id. at 121. Defendant DeWitt then pepper sprayed the Plaintiff in the face, causing the Plaintiff to scream that he could not breathe. Id. at 122–23. As the handcuffed Plaintiff rocked back and forth on his stomach, id. at 123–24, Defendant DeWitt punched the Plaintiff in the left side of his face three to six times, DeWitt Aff. at ¶ 23.

The Plaintiff primarily relies on the deposition testimony of Anthony Clark to support his claim against Defendant DeWitt. Although the Defendants contest the factual accuracy of Clark's testimony, they concede that, if taken as true, Clark's testimony creates a genuine issue of material fact that a jury must resolve. Defs.' Reply at 6–7, doc. 55. The Court agrees. According to Clark, Defendant DeWitt maced and repeatedly punched the Plaintiff who was handcuffed and incapacitated on the ground. "[T]he use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." Baker v. City of Hamilton, 471 F.3d 601, 607 (6th Cir. 2006). See also Champion v. Outlook Nashville, Inc., 380 F.3d 893, 905 (6th Cir. 2004) (holding that "no reasonable officer would have continued to spray a chemical agent in the face of a handcuffed and hobbled . . . arrestee"); Phelps v. Coy, 286 F.3d 295, 301–02 (6th Cir. 2002) (holding that no reasonable officer would strike a handcuffed arrestee in the head); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994) ("A reasonable person would know that spraying mace on an . . . incapacitated person . . . would violate the right to be free from excessive force"). The Defendants do not dispute that the Plaintiff's right to be free from the use of force after being incapacitated or neutralized was clearly established at the time of the incident. Therefore, the Plaintiff is entitled to present his excessive force claim against Defendant DeWitt to a jury.

3.      Defendant Officer Prime

Next, the Plaintiff alleges that Defendant Prime used excessive force against him when Defendant Prime punched him three to four times in his ribs after he was handcuffed and maced. To support these allegations, the Plaintiff cites the deposition testimony of Clark and Thompson. According to Clark and Thompson, when Defendant Prime arrived on the scene, the Plaintiff was

handcuffed and incapacitated due to being maced. Clark Dep. at 120, 124–26; Thompson Dep. at 79, 125–26. Nonetheless, Defendant Prime immediately punched the handcuffed Plaintiff three to four times in his ribs. Clark Dep. at 124–26; Thompson Dep. at 72–78.

The Defendants maintain that the Plaintiff was not handcuffed at the time Defendant Prime arrived on the scene. The Defendants acknowledge that Clark's testimony regarding the Plaintiff being handcuffed must be taken as true, but argue that, even under this factual scenario, Defendant Prime mistakenly believed that the Plaintiff was not handcuffed and that Defendant Prime's mistake "was reasonable considering the tense, uncertain, and rapidly evolving situation that [he] faced that night." Defs.' Reply at 7 n.1. Moreover, even assuming that the Plaintiff was handcuffed, the Defendants emphasize that he was actively resisting arrest and that district courts in the Sixth Circuit have condoned similar uses of force against handcuffed suspects who actively resisted arrest. Id. at 8. Therefore, the Defendants conclude, Defendant Prime is entitled to qualified immunity because he did not violate the Plaintiff's constitutional right to be free from excessive force.

In the Court's view, there exists a genuine issue of material fact on two key issues before the Court: (1) whether the Plaintiff was handcuffed when Defendant Prime punched him in the ribs and (2) whether the Plaintiff was actively resisting arrest when Defendant Prime punched him in the ribs. According to the Defendants, "[i]t remains uncontroverted that Prime punched Plaintiff to force Plaintiff to the ground in an effort to get him to stop resisting arrest." Id. at 9. The Court disagrees. The Plaintiff has presented evidence that at the time Defendant Prime arrived on the scene: the Plaintiff was lying face down on the ground, Clark Dep. at 66, 122–23; he was fully handcuffed, id. at 120; Thompson Dep. at 125–26; he had been maced in the face, Clark Dep. at 122–23; he could "barely move," id. at 133; and Defendant DeWitt was sitting on

12

his back, id. at 139. Construing these facts in the light most favorable to the Plaintiff, a jury could reasonably conclude that the Plaintiff was "incapacitated or neutralized" at the time Defendant Prime punched the Plaintiff in the ribs, which would support a finding of excessive force in this instance. See Baker, 471 F.3d at 607 ("the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law"). The Defendants do not dispute that the Plaintiff's right to be free from the use of force after being incapacitated or neutralized was clearly established at the time of the incident. Therefore, the Court will deny the Defendants' request for summary judgment as to Defendant Prime.

4.      Defendant Officers Pruitt and Westfall

The Plaintiff further alleges that Defendants Westfall and Pruitt used excessive force against him when they applied a "hobble strap" to his ankles and tied that strap to his handcuffs.

Moving for summary judgment, the Defendants argue that despite being handcuffed, the Plaintiff kicked his feet and rolled his body like he was trying to get off the ground.[1] According to the Defendants, under these circumstances, Defendant Pruitt's and Defendant Westfall's application of the hobble strap was objectively reasonable because it ensured the safety of the Plaintiff and the Defendants. Therefore, the Defendants contend, they are entitled to qualified immunity on the Plaintiff's excessive force claim.

In support of his excessive force claim against Defendants Pruitt and Westfall, the Plaintiff cites his deposition testimony, explaining what happened after he regained

---

[1] In their Reply brief, the Defendants also argue that video from the Ohio Union security camera demonstrates that Defendants Westfall and Pruitt did not hog-tie the Plaintiff or otherwise use excessive force against him. Defs.' Reply at 9. "[W]itness accounts seeking to contradict an unambiguous video recording do not create a triable issue." Kinlin v. Kline, 749 F.3d 573, 576 (6th Cir. 2014) (citing Scott v. Harris, 550 U.S. 372, 380–81 (2007)). Here, however, the quality of the video recording from the Ohio Union security camera is poor, and the Court cannot say that it definitively corroborates the Defendants' factual account.

consciousness, "The next thing I recall and the only thing I've been able to recall is waking up hogtied on the ground with an eye swollen shut, covered in mace, asking for water because I could not breathe." Clark Dep. at 94. The Plaintiff then described how the Defendants restrained him:

> All my limbs constrained, arms behind my back, rope running from the back of my hands to my legs where there's another knot that ties one of my feet midway up the calf of the other leg. And it's no slack and it's restraining. Like all my limbs are being pulled in the opposite direction from which they function, as if someone could reach out and touch their toes in the front, my limbs are being pulled so that they do that in the back.

Id. at 98. Continuing, the Plaintiff clarified his description concerning the manner in which his legs were restrained, stating "[o]ne leg was stretched out, fully extended. The other leg had the ankle tied midway up the calf of the stretched out leg, and there was a knot between those two points and then a rope running up the back side to a rope where my hands were knotted." Id. at 100. The Plaintiff's left leg was fully extended and his right leg was pulled up towards his buttocks. Id. at 102–03. When the Defendants moved the Plaintiff to a police car, he had to hop on one leg but was unable to fully extend that leg while hopping. Id. at 103–04.

The terms "hog-tie" and "hobble-strap" are defined as follows:

> A hog-tie is a restraint technique whereby a person's hands are cuffed behind his back, his feet are bound together, drawn up behind his back and attached to the handcuffs. It results in his ankles being bound to his handcuffed wrists behind his back with twelve inches or less of separation. A similar technique is referred to as hobbling. The only difference between the two techniques is the distance between ankles and handcuffed wrists; a separation of twelve inches or less is a hog-tie, a greater distance is a hobble.

Weigel v. Broad, 544 F.3d 1143, 1170 (10th Cir. 2008) (O'Brien, J., dissenting) (internal citations omitted). However, courts do not always use these terms consistently. In evaluating the use of force applied by Defendants Pruitt and Westfall to restrain the Plaintiff's legs, the Court

relies on the Plaintiff's description of that restraint rather than the parties' characterization of that restraint in their briefs.

Whether the use of a hobble-strap or hog-tie rises to the level of excessive force is a fact-intensive inquiry. Generally, courts have found that officers' use of a hobble-strap or hog-tie to restrain a resistant subject does not constitute excessive force. See Gunter v. Twp. of Lumberton, 535 F. App'x 144, 148 (3d Cir. 2013) (holding that the hog-tying of a subject that resisted arrest did not constitute excessive force); Blankenhorn v. City of Orange, 485 F.3d 463, 479 (9th Cir. 2007) ("We agree with our sister circuit that, in some situations, the need to maintain control of a person who physically struggled while being taken into custody might reasonably call for the use of hobble restraints"); Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1292 (11th Cir. 2009) (finding that use of a hobble restraint that was tightened to form a hogtie was not sufficiently egregious to constitute excessive force because suspect refused to sit upright, was unable to remain calm and therefore "remained a safety risk to himself and others"); Garrett v. Athens–Clarke Cnty., Ga., 378 F.3d 1274, 1280–81 (11th Cir. 2004) (finding police officers were entitled to qualified immunity because it was not unconstitutionally excessive force to pepper spray and fetter a suspect by tying his wrists less than 12 inches from his ankles where suspect continued to violently resist); Mayard v. Hopwood, 105 F.3d 1226, 1227–28 (8th Cir. 1997) (holding that the use of a hobble restraint was objectively reasonable in light of plaintiff's resistance at time of arrest); Tobias v. Cnty. of Putnam, 191 F. Supp. 2d 364, 378 (S.D.N.Y. 2002) (finding that where subject resisted arrest and did not suffer from "significant diminished capacity," police officers "use of the four-point restraint did not, in and of itself, constitute excessive force"); Price v. Cnty. of San Diego, 990 F. Supp. 1230, 1238 (S.D. Cal. 1998) (concluding that "the hogtie restraint in and of itself does not constitute excessive force").

However, courts have found that the use of a hobble restraint or hog-tie on an arrestee suffering from diminished capacity may rise to the level of excessive force because it places such an arrestee at risk of positional asphyxiation. See Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1188–89 (10th Cir. 2001) (holding that hog-tying of individual suffering from diminished capacity constituted excessive force because of "significant risk to the individual's health or well-being"); Gutierrez v. City of San Antonio, 139 F.3d 441, 451 (5th Cir. 1998) (denying officers who hog-tied plaintiff suffering from diminished capacity qualified immunity on excessive force claim and recognizing "substantial risk of death or serious bodily harm . . . when a drug-affected person in a state of excited delirium is hog-tied and placed face down in a prone position"); see also Champion, 380 F.3d at 904 (citing Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir. 2001)) ("The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted"); Johnson v. City of Cincinnati, 39 F. Supp. 2d 1013, 1014 (S.D. Ohio 1999) (recognizing danger of "cardiac dysrhythmia" due to "agitated delirium with restraint" where plaintiff "was placed face down on a stretcher with his legs tied and his hands cuffed behind his back").

Here, the Defendants have presented evidence that: (1) after the Plaintiff was handcuffed, he kicked his feet and rolled on to his side as if he was trying to get off the ground, Westfall Aff. at ¶ 4, doc. 40-6; (2) Defendants Westfall and Pruitt applied the hobble strap to prevent the Plaintiff from kicking his feet, DeWitt Aff. at ¶ 30; (3) Defendant Westfall attached the excess length of the hobble strap to the Plaintiff's handcuffs for the safety of the Plaintiff and the Defendants, Westfall Aff. at ¶ 7; (4) if the excess length of the strap was not attached to the Plaintiff's handcuffs, the metal clip at the end of the strap could have caused injury, id.; (5) the Plaintiff was not hog-tied but was able to fully extend both of his legs, id. at ¶ 8; and (6) after

being hobbled, the Plaintiff was placed on his side in a recovery position so that he could breathe, id.

In his deposition, the Plaintiff does not describe the events before the hobble strap was applied and instead asserts that he was unconscious at that time. Consequently, the Plaintiff is unable to rebut the affidavits of Defendants Westfall and Pruitt. Although the Plaintiff disputes that he was resisting his arrest and insists that he "was not any sort of a flight risk or danger to anyone at the scene at the time Defendants Westfall and Pruitt put a hobble strap on his ankles," the Plaintiff designates no evidence to support these factual assertions. See Pl.'s Resp. in Opp. at 22. Moreover, the Plaintiff does not identify any evidence that he suffered from diminished capacity or that he was at risk of positional asphyxiation as a result of the Defendants use of a hobble strap.

The only disputed factual issue before the Court is whether the Plaintiff could extend one or both of his legs after the application of the hobble strap. The Plaintiff maintains that his right leg was pulled towards his buttocks but concedes that he was able to ambulate to the police cruiser by hopping on one foot with the support of multiple officers. Hines Dep. at 102–04. This is insufficient to create a genuine issue of material fact as to whether the Plaintiff was subject to excessive force as a result of the application of the hobble strap.

The uncontroverted evidence presented to the Court by the parties indicates that Defendants Westfall and Pruitt applied the hobble strap to prevent the Plaintiff from kicking his feet or attempting to get off the ground. Given the Defendant Officers' legitimate interest in the safety of the Plaintiff and themselves, the use of a hobble strap under these circumstances does not constitute excessive force. See Gunter, 535 F. App'x at 148; Blankenhorn, 485 F.3d at 479;

Lewis, 561 F.3d at 1292; Garrett, 378 F.3d at 1280–81; Mayard, 105 F.3d at 1227–28; Tobias, 191 F. Supp. 2d at 378; Price, 990 F. Supp. at 1238.

### B.     *Failure to Intervene*

The Plaintiff alleges that Defendants Paxton, DeWitt, and Prime failed to intervene and prevent one another's use of excessive force against the Plaintiff. Pl.'s Resp. in Opp. at 23–24. "A police officer may be held liable for failure to intervene during the application of excessive force when: '(1) the officer observed or had reason to know that excessive force would be or was being used; and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" Goodwin, 781 F.3d at 328 (quoting Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997)). The record indicates that Defendants Paxton and DeWitt directly participated in the takedown and subsequent restraint of the Plaintiff. Given their close proximity to one another and Defendant Prime, a jury could reasonably infer that they observed or had reason to know that excessive force would be or was being used. Further, the record evidences a genuine issue of material fact as to whether Defendants Paxton and DeWitt had both the opportunity and the means to prevent the alleged use of excessive force against the Plaintiff. As a result, the Plaintiff may proceed with his failure to intervene claim against Defendants Paxton and DeWitt.

The Plaintiff's failure to intervene claim against Defendant Prime is based on his alleged failure to intervene when Defendants Westfall and Pruitt applied a hobble strap to the Plaintiff's legs. Because the Court concludes that Defendant Westfall's and Pruitt's application of the hobble strap did not rise to the level of excessive force, Defendant Prime is entitled to summary judgment as to the Plaintiff's failure to intervene claim.

C.    § 1983 Conspiracy

Finally, the Plaintiff alleges that the Defendants conspired with one another to fabricate and cover up their excessive use of force against the Plaintiffs. In support of this allegation, the Plaintiff asserts that:

> The Defendant-Officers [sic] Affidavits, as well as the reports or documents of the incident made by the various Defendant Officers vary very little from each other factually and in fact contain much identical language, yet are remarkably, vastly different from the version of events presented in the recorded statements and testimony of Mr. Hines, Anthony Clark, Joachim Thompson and other third party witnesses.

Pl.'s Resp. in Opp. at 25. According to the Plaintiff, the similarities between the Defendants' accounts would allow a jury to infer that the Defendants conspired to violate his constitutional rights by fabricating their reports concerning the arrest of the Plaintiff.

To establish a § 1983 conspiracy claim, a plaintiff must show that "an agreement [existed] between two or more persons to injure another by unlawful action." Bazzi v. City of Dearborn, 658 F.3d 598, 602 (6th Cir. 2011) (citation and internal quotation marks omitted). Specifically, a plaintiff must prove that: (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff of his or her rights, and (3) an overt act was committed in furtherance of the conspiracy. Id. "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved." Hensley v. Gassman, 693 F.3d 681, 695 (6th Cir. 2012) (quoting Hooks v. Hooks, 771 F.2d 935, 943–44 (6th Cir. 1985)) (internal quotation marks omitted). A plaintiff may rely on circumstantial evidence to establish the existence of an agreement among the conspirators. Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003) (citing Weberg v. Franks, 229 F.3d 514, 528 (6th Cir. 2000)).

Here, the Plaintiff's opposition to the Defendants' Motion is insufficient to survive summary judgment. Beyond general reference to the parties' affidavits, "reports," and "documents," the Plaintiff does not identify any specific facts to support his vague and conclusory allegations. After the Defendants demonstrated an absence of evidence to support the Plaintiff's civil conspiracy claim, the Plaintiff, as the nonmoving party, was obligated to set forth specific facts showing a triable issue. Mosholder, 679 F.3d at 448–49 (citing Matsushita Elec. Indus. Co., 475 U.S. 574; Fed. R. Civ. P. 56(e)). The Plaintiff failed to do so here. The Plaintiff has identified no evidence, direct or circumstantial, demonstrating that: (1) a single plan existed, (2) the Defendants shared a conspiratorial objective to deprive the Plaintiffs of their civil rights, or (3) an overt act was committed in furtherance of that objective.

Assuming *arguendo* that the Plaintiff's allegations were substantiated, the Court fails to see how the similarities between the Defendants' accounts of the incident support the inference that the Defendants conspired to deprive the Plaintiff of his constitutional rights. The Plaintiff does not cite any case law to support such a conclusion, and the Court discerns no basis for such a finding as a matter of law. A ruling endorsing the Plaintiff's position would subject law enforcement agents to potential liability for § 1983 conspiracy any time their reports concerning a use of force incident were similar to one another. This cannot be the law. Consequently, the Defendants are entitled to summary judgment on the Plaintiff's § 1983 conspiracy claim.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendants' Motion for Summary Judgment (doc. 40).

IT IS SO ORDERED.

S/ James L Graham

James L. Graham
UNITED STATES DISTRICT JUDGE

Date:   June 5, 2015